IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CHERYL RENEE HAMILTON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **2:10-cv-1350-AKK** |
| **GESTAMP ALABAMA, INC.** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Cheryl Renee Hamilton ("Plaintiff") filed this action against her former employer, Gestamp Alabama, Inc. ("Defendant"), on May 26, 2010, alleging discrimination "because of my African American race and because I am an African American female," in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. Doc. 1 at 12.

Defendant moved for summary judgment on March 23, 2011. Doc. 27. The court gave Plaintiff a deadline of April 18, 2011 to respond. Doc. 30. That day, Plaintiff filed instead a Motion to Denied [sic] Motion for Summary Judgment, in which she alleged that Defendant failed to produce documents she requested. Doc. 31. The court construed the filing as a motion to compel and ordered Defendant to hand deliver to her the requested documents by May 11, 2011. Doc.

34 at 2. Moreover, the court extended to June 3, 2011, the deadline for Plaintiff to respond to the motion and, significantly, informed her that "her failure to do so will be treated by this court as a concession to Defendant's motion." *Id.* Plaintiff never responded and, for this reason alone, the motion is due to be GRANTED. *See Zivojinovich v. Barner*, 525 F.3d 1059, 1062 n.1 (11th Cir. 2008) (failure to offer any argument in a brief abandons the issue); *Brewer v. Purvis*, 816 F. Supp. 1560, 1579 (M.D. Ga. 1993), ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue."), *aff'd*, 44 F.3d 1008 (11th Cir. 1995); *see also Robinson v. Regions Fin. Corp.*, 242 F. Supp. 2d 1070, 1075 (M.D. Ala. 2003) (deeming abandoned the plaintiff's claims that she failed to address in her opposition to summary judgment). Alternatively, the motion is also due to be granted because Plaintiff cannot present a *prima facie* case or show that Defendant's articulated reasons for her discharge are pretexual.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

## II.  FACTUAL BACKGROUND

Plaintiff's "response," i.e. her request for Defendant to produce documents,

states, in part, that Defendant failed to discharge other employees who engaged in similar conduct. Doc. 31 at 1 & 2 ("I asked for personnel files that concern mislabels . . . . Jeff Wilson coach and counseling . . . for sign-off of part with proper attention to detail, verifying part counts and scribed number . . . ."). Plaintiff states also that Defendant discharged her for conduct she did not engage in – "That will prove that the label on the container were indeed an old label if not the labeling procedures would not have been changed." *Id.* at. 2. Other than these statements, Plaintiff does not otherwise dispute Defendant's factual assertions. Nevertheless, the following facts are presented in a light most favorable to Plaintiff.

  A. <u>Background Information</u>

  Defendant is a stamping and welding company that provides automotive parts to manufacturers, including Mercedes-Benz U.S. International ("MBUSI"). Doc. 29-1 at ¶ 2. MBUSI is Defendant's major customer. *Id.* at ¶ 3; Doc. 29-2 at 12 (Depo. at 43). As such, Defendant places utmost importance on the quality and accuracy of parts it sends to it. *Id.*

  Defendant assigns its employees, known as "associates," to zones. Typically, each zone has a Team Leader assigned to each shift. Team Leaders are hourly, non-exempt associates who assign work tasks to other associates and also

perform those tasks as well. As non-management employees, Team Leaders do not have any authority to hire or fire. Doc. 29-1 at ¶ 5. Defendant also employs Group Leaders, who are exempt, managerial associates responsible for ensuring the smooth operation of their respective zones. Doc. 29-1 at ¶ 5. At all relevant times, Jerald Burnette ("Burnette"), a white male, served as Group Leader for Materials, Doc. 29-4 at ¶ 2, the department in which Plaintiff worked.

Defendant utilizes a progressive discipline policy,[1] under which associates may progress in discipline as follows: verbal warning, a written warning, a Decision Making Leave/Last Chance Agreement ("Last Chance Agreement"), and, finally, discharge. Doc. 29-1 at ¶ 8, Att. 1; Doc. 29-3 at 39 (Depo. Exh. "DX" 12). However, Defendant may skip any of the steps depending upon the nature and severity of the offense, the associate's disciplinary history, and the impact of associate's conduct on other associates. Doc. 29-1 at ¶ 8, Att. 1. Moreover, repeated violations or a failure to perform consistent with company standards will result in discharge. *Id.* Finally, any non-attendance-related[2] discipline that occurs within a year of a Last Chance Agreement results in a discharge. *Id.* at ¶ 15.

---

[1] Plaintiff received a copy of the 2007 Associate Handbook, which contains the progressive discipline policy, and the subsequent revisions and updates. Doc. 29-2 at 14 (Depo. at 51, 55, & DX 2).

[2] Defendant separates the administration of its progressive discipline for attendance from discipline for policy and procedure infractions. Doc. 29-1 at ¶ 15 & Att. 1 at p.39.

B.      Plaintiff's Employment History

Defendant hired Plaintiff as a Receiving Clerk in 2004. Doc. 29-2 at 11 (Depo. at 40). Defendant promoted Plaintiff to Shipping Coordinator on January 21, 2008. Doc. 29-2 at 12 (Depo. at 40); Doc. 29-1 at ¶ 12, Att. 3. In this position, Plaintiff reported to Burnette, Group Leader. Doc. 29-2 at 12 (Depo. at 42); Doc. 29-4 at ¶ 4. As a Shipping Coordinator, Plaintiff's duties included creating shipping labels and shipping parts to MBUSI. Doc. 29-2 at 11-12 (Depo. at 40-41). Significant to this matter, Plaintiff also had to ensure that packages had the correct shipping label on them. *Id*. at 12 (Depo. at 41). Moreover, Plaintiff knew the importance of performing her job correctly in light of MBUSI's status as Defendant's key customer. *Id.* (Depo. at 43).

C.      Plaintiff's Disciplinary History and Termination

On January 24, 2007, Defendant disciplined Plaintiff for failing to clock out when she left for lunch. Doc. 29-2 at 15-16 (Depo. at 56-57 & DX 5); Doc. 29-1 at ¶ 13, Att. 4. Plaintiff admitted that no one ever told her that she did not have to clock out for lunch and, indeed, signed the written warning acknowledging that Defendant discussed the counseling with her.[3] Doc. 29-2 at 16 (Depo. at 57 & DX

---

[3]Plaintiff alleges in her complaint that all employees left for lunch without clocking out, that Defendant's practice is simply to deduct 30 minutes for lunch, and that her Group Leader, Jerald Burnette, disciplined her on this occasion "to get a write up in my file, there were [sic]

5); Doc. 29-1 at Att. 4.

Defendant disciplined Plaintiff next on December 7, 2007, for an unexcused absence on December 4, 2007. Doc. 29-2 at 17 & 18 (Depo. at 61, 65 & DX 6); Doc. 29-1 at ¶ 14, Att. 5. Plaintiff remained discipline free until September 24, 2008, when Defendant suspended her for three days and issued her a Last Chance Agreement for fighting a co-worker, Patricia Lowery ("Lowery"). Doc. 29-2 at 18 (Depo. at 66-67 & DX 7); Doc. 29-1 at ¶ 15, Att. 6. During the altercation, Plaintiff used profanity, "twirled" a "stick" in the air, threatened to strike Lowery if Lowery "pulled that box cutter out," and told Lowery that she was going to "bust [her] upside [her] head." Doc. 29-2 at 19 & 21 (Depo. at 69-70, 79, & DX 7); Doc. 29-1 at Att. 6. Due to the nature and severity of the incident, Defendant issued Plaintiff and Lowery a Last Chance Agreement. Doc. 29-2 at 5-6 (Depo. at 15-18); Doc. 29-1 at ¶ 15.

Five months later, Defendant discharged Plaintiff on February 23, 2009 for

---

about to be a downsize in the department" and that Burnette singled her out because she was "the only black girl in [the] department." Doc. 3 at 2. Plaintiff filed her EEOC charge on June 3, 2009. Doc. 29-2 at 34 (Depo. at 130 & DX 11). Therefore, her race and gender claim for this January 2007 write up or for any other conduct occurring more than 180 days before she filed her EEOC charge is barred by the applicable statute of limitations. The claims fail also because Plaintiff provided no supporting evidence for her contention or to show that Defendant singled her out because of her race or gender (which is doubtful she can show since she was not the only female in the department). In any event, facts, not speculation and conjecture, carry the burden in discrimination cases. *See Mack v. ST Mobile Aerospace Eng'g, Inc.*, 195 Fed. Appx. 829, 844 (11th Cir. 2006).

a "mislabel" it discovered at MBUSI.  Doc. 29-1 at ¶ 16, Att. 7; Doc. 29-2 at 22 (Depo. at 84, DX 9).  A "mislabel" is a serious quality issue and has a significant impact on Defendant's customers.  Doc. 29-1 at ¶ 18; Doc. 29-4 at ¶ 6; Doc. 29-2 at 24 ( Depo. at 92).  A "mislabel" occurs when an employee places the wrong product label on a container of parts.  Doc. 29-1 at ¶ 17; Doc. 29-4 at ¶ 5.

Defendant learned about the "mislabel" when MBUSI raised the matter with Charlie King ("King").  King is an employee Defendant stationed at MBUSI as Defendant's Engineering Liaison to MBUSI.  Doc. 29-5 at ¶ 3.  Part of King's job as Engineering Liaison is to ensure that MBUSI receives correctly labeled parts and to assist MBUSI with correcting any defects or problems with Defendant's products.  *Id.* at ¶ 4.  When MBUSI informed King of the "mislabel" on February 23, 2009, *id.* at ¶ 5; Doc. 29-2 at 23-24 (Depo. at 88-89 & DX 9), he photographed the label and the parts, notified Burnette and other management employees, and provided them with a copy of the photographs via email, Doc. 29-5 at ¶¶ 6-7, Att. 1&2.  King recognized the parts as A16463640 ("3640") parts, and noticed that the label identified them as A164633540 ("3540") parts.  *Id.* at ¶ 6; Doc. 29-2 at 23-24 (Depo. at 88-89 & DX 9).

After receiving King's email, Burnette examined the photographs and noticed that the label had a red "H" initialed on it, which he recognized as

Plaintiff's.  Doc. 29-4 at ¶¶ 7- 8, Att. 1.  Plaintiff conceded that the photograph of the mislabel has her initial on it.  Doc. 29-2 at 23-24 (Depo. at 88-89 & DX 9); Doc. 29-1 at ¶ 19-20, Att. 8; Doc. 29-4 at ¶ 8, Att. 1.  She admitted also that her initials on the shipping labels signified that she verified that she labeled the parts accurately.  Doc. 29-2 at 23-24 (Depo. at 85, 88-89); Doc. 29-4 at ¶ 7; Doc. 29-1 at ¶ 20.

 Furthermore, from examining the photographs, Burnette recognized that the right-hand side of one of the pictures showed A1646303640 ("3640") parts, rather than the A1646303540 ("3540") parts reflected on the shipping label.  Doc. 29-4 at ¶ 8, Att. 1; Doc. 29-2 at 23-24 (Depo. at 88-89 & DX 9).  After examining the photographs, Burnette informed Marva Morgan, Defendant's Human Resources Manager, that Plaintiff had mislabeled the parts, and showed Morgan the pictures.  Doc. 29-4 at ¶ 9; Doc. 29-1 at ¶¶ 1, 4, 19-20.  Because Plaintiff received a Last Chance Agreement for a non-attendance related infraction less than a year prior to this incident, consistent with Defendant's policies, Morgan, who is female and African American, made the decision to discharge Plaintiff.  Doc. 29-1 at ¶¶ 16, 21, Att. 7; Burnette Aff at ¶ 10.  That same day, Morgan and Burnette met with Plaintiff and explained the reason for her discharge.  Doc. 29-1 at ¶ 22; Doc. 29-4 at ¶ 11.

On March 2, 2009, Morgan received two emails from Plaintiff requesting that Morgan reconsider the decision to discharge her. Doc. 29-1 at ¶ 23-24, Att. 9 & 10. Although not required to do so under Defendant's policies, nonetheless, Morgan considered the information Plaintiff provided, investigated it, and confirmed again the facts that led to Plaintiff's discharge. *Id.* at ¶ 25. On March 13, 2009, after completing her investigation, Morgan informed Plaintiff that she would not reinstate Plaintiff. *Id.*

Defendant replaced Plaintiff with April Whitmore, a white female. *Id.* at ¶ 26; Doc. 29-2 at 20 (Depo. at 75). Defendant disciplined Whitmore for mislabeling a part on July 14, 2008. Doc. 29-1 at ¶ 26, Att. 12; Doc. 29-2 at 20 (Depo. at 75). Whitmore's discipline and the discipline Plaintiff contends white employees Courtney Patterson, Jeffrey Wilson, David Minor, and Sandra Gamble also received is the basis for her contention that Defendant treated her less favorably than similarly situated employees.

### III.  ANALYSIS

A *pro se* complaint is to be construed liberally. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an

action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

    A.    *Title VII race and gender discrimination claims.*

The court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for Plaintiff's race and gender discrimination claims since this is a circumstantial evidence case. Under that framework, Plaintiff must first create an inference of discrimination by establishing a *prima facie* case. *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted). If plaintiff satisfies her initial burden, "then the defendant must show a legitimate, non-discriminatory reason for its employment action." *Id*. (citation omitted). "If it does so, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." *Id*. (citation omitted). However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citation omitted).

    1. <u>Plaintiff cannot establish a *prima facie* case of race discrimination</u>.

To establish a *prima facie* case of disparate treatment, Plaintiff must show:

(1) membership in a protected class; (2) that she is qualified for the position; (3) that she suffered an adverse employment action; and (4) that Defendant treated her less favorably than a similarly-situated individual outside her protected class. *Sridej v. Brown*, 361 F. App'x 31, 33 (11th Cir. 2010) (per curiam) (citation omitted). Based on her EEOC charge, Doc. 1 at 12, deposition testimony, Doc. 29-2, and her "response" to the motion for summary judgment, Doc. 31, Plaintiff's entire discrimination claim hinges on her contention that Defendant treated her differently than David Minor, Sandra Gamble, April Whitmore, Courtney Patterson and Jeffrey Wilson. To prevail then, Plaintiff must, at a minimum, show that she and her comparators are similarly situated. Defendants contend that Plaintiff cannot establish a *prima facie* case because none of her alleged comparators were on a Last Chance Agreement when they mislabeled parts. Doc. 28 at 18-19, 25.

"To show that employees are similarly situated, the plaintiff must show the 'employees are similarly situated in all relevant respects.'" *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (citation omitted). "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (citation omitted). "It is also 'necessary to consider whether the employees are involved in or accused of the same or similar

conduct and are disciplined in different ways.'" *Sridej*, 361 F. App'x at 35 (citing *Knight*, 330 F.3d at 1316).

Turning to the facts here, Plaintiff's reliance on the purported comparators is misplaced since she failed to show that the comparators are similarly situated in all respects.  Basically, Plaintiff contends that her comparators only received disciplinary write-ups for mislabeling parts and did not lose their jobs.  While that may, in fact, be the case, since Defendant uses progressive discipline – a fact which Plaintiff acknowledged – Plaintiff needs to show that, like her, the comparators were on a Last Chance Agreement when they mislabeled the parts.  Despite the court extending the deadline for her to respond, Plaintiff never came forward with this critical evidence. Instead the evidence before the court is that Defendant has no record of Minor or Gamble ever mislabeling a part and that while Whitmore, Patterson, and Wilson mislabeled parts as Plaintiff contends, none of them did so *after* receiving a Last Chance Agreement.  Doc. 29-1 at ¶¶ 26-30, Att. 14-15; Doc. 29-2 at 20 (Depo. at 75).  Indeed, Plaintiff admits she does not know whether Whitmore or Patterson ever mislabeled a part after receiving a Last Chance Agreement.  Doc. 29-2 at 28 (Depo. at 108).  Absent evidence that these individuals mislabeled parts after they received a Last Chance Agreement and that Defendant treated them more favorably by failing to discharge them, Plaintiff's

reliance on their infractions or purported infractions misses the mark. Therefore, Plaintiff cannot establish a *prima facie* case.

    2.    <u>Plaintiff failed to produce evidence that Defendant's proffered reason for her termination was pretextual</u>.

Alternatively, even if Plaintiff <u>could</u> establish a *prima facie* case, her discrimination claim still fails because she cannot show that the articulated reason for her discharge is pretextual. To establish pretext, Plaintiff "must demonstrate 'such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Sampath v. Immucor, Inc.*, 271 F. App'x 955, 960 (11th Cir. 2008) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). Here, Defendant argues essentially that it followed its progressive discipline process outlined in its Associate Handbook and discharged Plaintiff for incurring a non-attendance infraction within a year of her placement on a Last Chance Agreement. Doc. 32 at 6. Plaintiff failed to rebut this contention or present any argument or evidence that the proffered reason was pretextual.

At best, Plaintiff contends only that she did not mislabel the parts in question. However, this contention is belied by her deposition testimony where she

concedes that she initialed and placed the label on the wrong parts. Doc. 29-2 at 23-24 (Depo. at 88-89). Importantly, "[t]he question to be resolved is not the wisdom or accuracy of [the employer's] conclusion . . . or whether the decision to fire her was prudent or fair. Instead, our soul concern is whether unlawful discriminatory animus motivated the decision." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (internal quotation and citation omitted). That Plaintiff may not have engaged in the infraction, as she now contends, is irrelevant as long as Defendant had a reasonable or good faith basis for its conclusion that she did. *See Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir. 1999). Here, Defendant has presented unrebutted evidence that (1) its customer notified it of mislabeled parts, (2) that its employee on-site reviewed the parts and confirmed the customer's report, (3) that the employee then photographed the shipping label and parts and e-mailed the photographs to his supervisors, (4) that these supervisors confirmed that the parts were indeed mislabeled, and (5) verified from the mark on the shipping label that Plaintiff is the one who misplaced the box of parts. Doc. 29-5 at ¶¶ 5-8, Att. 1&2; Doc. 29-4 at Doc. 29-5 at ¶¶ 7-8. These facts establish that Defendant had a reasonable basis to conclude that Plaintiff mislabeled the parts in question. Accordingly, Plaintiff's attempt to show pretext by denying that she mislabeled the

parts falls short.

## IV.  CONCLUSION

Based on the record before it, the court sees no evidentiary basis to find that Plaintiff can establish a *prima facie* case of race or gender discrimination or that Defendant's proffered reasons for her discharge are pretextual.  Because there are no genuine issues of disputed fact for trial, Defendant's motion for summary judgment is due to be GRANTED.

Done the 9th day of August, 2011.

_____
ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE